UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:09CR 169 HEA |
| | ) | |
| DONALD L. GARDNER, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT, RECOMMENDATION AND ORDER

Defendant has filed three pretrial motions: (1) Defendant's First Motion in Limine (Document #36); (2) Motion to Suppress Evidence (Document #37); and (3) Defendant's Motion to Produce (Document #38). At the evidentiary hearing when the Motion to Suppress Evidence was taken up, both parties asked that Defendant's First Motion in Limine and Defendant's Motion to Produce be deferred and be heard by the trial judge. (Tr., p. 3).

Defendant alleges in defendant's Motion to Suppress Evidence (Document #37) that because there was no arrest or search warrant issued affecting the defendant, Donald L. Gardner, the government has the burden to show probable cause for stopping the vehicle in which defendant was riding on September 8, 2009. Defendant argues that because Deputy Bryan Fox thought Mr. Gardner was driving his own vehicle, a black or green Chevy pickup and he was actually a passenger in a white or silver Ford Escape, there was no basis to stop the Ford Escape. Defendant claims that until the government is able to justify the stop of the Ford Escape, evidence obtained from and after the seizure of the defendant at the traffic stop should be suppressed.

## Factual Background

On September 8, 2009, Sherry Stroupe filed an Adult Abuse/Stalking Petition for an Order of Protection in the Circuit Court of Reynolds County, Missouri. Donald L. Gardner was the Respondent. In that petition, Stroupe alleged that she was the former fiancée of Gardner and that they had both previously lived together at Rt. 3, Box 224, Redford, Missouri. The factual basis cited by Stroupe in her petition is as follows:

> At 4 a.m. Saturday, 9-5-09 - Don kicked open the door of a friend's house. I was asleep on the sofa bed. He screamed & cursed, then threw a flashlight, striking my friend and myself. He then stomped out yelling, "I've got a gun. I'll shoot your ass." He got in his vehicle & left. Since, he's left messages that I can't have my possessions. He stated that he would shoot me.

The friend referred to in the Petition was Rodney Fears. Stroupe and Fears were involved in a relationship at the time. Stroupe signed the petition under penalty of perjury that the facts stated in the petition were true. The Circuit Court entered an Ex Parte Order of Protection on September 8, 2009, directing that Gardner not abuse, threaten to abuse, stalk, molest or disturb the peace of Stroupe wherever Stroupe may be found, nor could he enter any premises wherever Stroupe might reside or communicate with Stroupe in any manner. A hearing was scheduled for September 24, 2009, to hear evidence concerning Stroupe's allegations.

On September 24, 2009, Stroupe and Gardner appeared in the Reynolds County Circuit Court for a contested hearing. After that hearing, Judge Edith Rutter found that Stroupe had proved the allegations of abuse and stalking against Gardner. Judge Rutter entered an Order of Protection which provided that Gardner was not to communicate with Stroupe and that Gardner was not to enter or stay upon premises wherever Stroupe may reside. The Order also notified Gardner that he was not to possess a firearm or ammunition pursuant to federal law.

On October 24, 2009, Stroupe called the sheriff's dispatcher to report that Gardner was on his way to Mr. Fears's residence with a weapon to kill him. Deputy Bryan Fox then drove to the Fears residence, where he made contact with Stroupe and Fears. Stroupe reported that she had gone to the Gardner residence to speak with Gardner. While she was there, Gardner would not let her leave. Eventually, Gardner went into another room, at which time Stroupe managed to leave the home and drive away. She called the sheriff's office at that time to report Gardner's threats against Rodney Fears. Stroupe also reported that she was living at the Fears home.

The officers decided to go to the nearby intersection of Highway 106 and F Highway to try to intercept Gardner if he tried to go to the Fears residence. They believed that Gardner would be driving a Chevrolet pickup. At around 1:05 a.m., the officers received a radio dispatch that Fears had called the sheriff's office and reported that Gardner had just left the Fears home. Fox and another deputy drove toward the Fears home. Shortly before Fox reached the driveway to the Fears home, Fox met a Ford Escape. The Escape appeared to be accelerating. Fox continued to the Fears home, where he again spoke with Fears and Stroupe. Fears reported that the Ford Escape had driven near his home. Fears turned on his outside light and saw that Gardner was a passenger in the Escape. Stroupe recognized the Escape as a vehicle that belonged to Gardner's son. When the light came on, the Escape backed away from the home and left the area. Fox radioed the other officers and asked them to stop the Escape.

Ellington Police Officer Randall Martin was driving his patrol car toward the Fears residence when this radio traffic was continuing. He met the Ford Escape on Highway 106. Martin turned his patrol car around and got behind the Escape. Martin turned on his emergency lights to pull the Escape over. The Escape pulled to the side of the road in Ellington, Missouri.

At the time of the stop, Martin knew that Gardner had made recent threats against Fears to shoot Fears with a firearm. Martin also knew that Stroupe had an Order of Protection against Gardner and that Gardner had just been seen at the Fears residence. Based on those facts, Martin drew his service handgun and ordered the driver of the vehicle out. The driver, Corey Pigg, was handcuffed and patted down. Martin then ordered Gardner out of the vehicle. Gardner stepped out and was handcuffed and patted down. During that pat down search, Martin felt five rounds of ammunition in the right front jacket pocket of Gardner. Martin did not seize those rounds but left them in the pocket. Another officer arrived to assist Martin. At this time, Martin asked Gardner if there was a firearm in the vehicle. Gardner said no. Martin then asked Pigg if there was a firearm in the vehicle. Pigg said there was. Martin asked Pigg if Martin could get the firearm. Pigg said yes. Martin then walked to the open driver's door of the Escape. When he looked in the driver's compartment, Martin could see the handle of a handgun sticking out from under the driver's seat. Martin reached in and seized the firearm.

Fox then appeared at the scene of the stop. Martin told Fox what had occurred at the traffic stop. Fox told Gardner that he was under arrest for Violation of an Order of Protection. Fox then reached into the right front pocket of Gardner and removed the five rounds of ammunition.

## **Discussion**

With regard to whether the officers had sufficient grounds to stop Mr. Gardner's car and at the risk of repetition, the court will review the evidence.

As related in the Factual Background, on September 24, 2009, Judge Edith Rutter, following a hearing at which defendant appeared and had the opportunity to be heard, found that Sherry Stroupe had proved allegations of abuse or stalking against Defendant Donald L. Gardner. The Judge

issued a Full Order of Protection which provided that Mr. Gardner was not to communicate with Sherry Stroupe and that Mr. Gardner was not to enter or stay upon premises wherever Ms. Stroupe may reside. The order also notified the defendant that he was not to possess a firearm or ammunition pursuant to federal law. (Govt's Ex. 3). The officers were aware of this full order of protection.

On October 24, 2009, Stroupe called the Reynolds County Sheriff's Department to report Gardner was on his way with a weapon to the residence of Rodney Fears to kill Fears.

Sheriff's Deputy Bryan Fox drove to the Fears residence where he met Fears and Stroupe. Ms. Stroupe told Deputy Fox that she had gone to the Gardner residence and had been held hostage by Gardner until she was able to escape. She said she was living at the Fears residence. Deputy Fox then decided to go to the Gardner residence. Previously he had requested officers of the Ellington Police Department to set up at the intersection of Highways 106 and F to intercept Mr. Gardner. On his way to the Fears home, he stopped at the intersection of Highways 106 and F to talk to the Ellington officers who were still there. While at the intersection, Deputy Fox received a message from the Reynolds County dispatcher that Gardner had left the Fears residence and he was not in his own vehicle. Deputy Fox and the Ellington officers then headed back to the Fears residence. They met one vehicle on Highway 106, a white or light silver Ford Escape that appeared to be accelerating.

Before he arrived at the Fears residence, Fox met Fears and Stroupe on the county road. Ms. Stroupe and Mr. Fears said that Mr. Gardner came to the Fears residence, Fears turned on his porch light and saw Gardner in the passenger seat of a Ford Escape. The Escape then backed out, turned around and left. Fears said he identified Mr. Gardner setting in the passenger seat. Ms. Stroupe said the Escape belonged to Mr. Gardner's son. Deputy Fox radioed Officer Martin, who was in the very rear of the line of police cars in the Fears driveway, and told him that from the information Fox

received from the victim that the vehicle the officers had passed on Highway 106 was the vehicle carrying Mr. Gardner. Deputy Fox had previously asked that the police officers stop Gardner. Martin stopped the Escape at the four-way intersection in Ellington. The driver, Corey Pigg, gave Officer Martin permission to search the car. Martin found a .357 magnum revolver in the vehicle.

As the foregoing review of the evidence presented at the suppression hearing reveals, the officers had the following information:

Donald Gardner and Sherry Stroupe had previously lived together. Stroupe obtained a Full Order of Protection against Gardner requiring that Gardner not communicate with Stroupe and that he not enter on any premises wherever Stroupe might reside. The order also required that Gardner not possess a firearm or ammunition. The officers were aware of the Order of Protection. On October 24, 2009, Stroupe called the Sheriff's Department relating that Gardner was on his way with a weapon to the residence of Rodney Fears to kill him. Deputy Bryan Fox drove to the Fears residence. Deputy Fox learned from Stroupe that she had gone to Gardner's residence and had been held hostage by Gardner. When she managed to escape, she had gone to Fears's home where she was living at the time. Gardner had come to the Fears home, violating the Order of Protection. He was not in his own vehicle, a black or green pickup, but Officer Fox learned, was a passenger in his son's car, a silver or white Ford Escape, which matched the car the officers had passed on their way to the Fears home. Fox had previously radioed the Ellington officers to attempt to intercept Gardner. Officer Martin stopped the Ford Escape and obtained the consent of the driver and owner of the Escape to search the vehicle. Martin had asked Pigg if there was a weapon in the vehicle. Pigg said there was. Martin asked Pigg if he (Martin) could retrieve it. Pigg told him yes. Martin reached in and retrieved the .357 magnum. Martin had patted down Gardner and felt several shells in the right

hand front pocket of Gardner's jacket. Martin did not remove the shells, but he told Deputy Fox about the shells when he arrived. Fox took the shells out of Gardner's pocket. Martin gave the firearm to Deputy Fox.

Besides traveling to Fears's home where Stroupe was staying, Gardner violated the Full Order of Protection by possessing the handgun and bullets. Gardner also had made threats to kill Fears. Fox placed Gardner under arrest for violating the Full Order of Protection.

Before Officer Martin stopped the Pigg vehicle, he knew that Gardner was a passenger in the white or silver Escape. Martin knew of the violations of the Full Order of Protection and the threats to kill Fox.

### Reasonable Suspicion

Officer Martin had reasonable suspicion based on information he possessed that Mr. Gardner was violating or had violated the law. Thus, the stop based on reasonable suspicion that criminal activity was afoot was legitimate and valid. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968); United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989); United States v. Walker, 494 F.3d 688, 691 (8th Cir. 2007). Martin had information, particularized, objective facts, which, taken together with rational inferences derived from these facts, reasonably warranted suspicion that a crime was being or had been committed.

While reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification for the investigatory stop. During a Terry stop, officers are permitted to check for weapons and to take any additional steps reasonably necessary to protect their personal safety and maintain the status quo during the course of the stop. Walker, at 688 citing United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675 (1985).

The seizure of the handgun in the automobile was authorized on a number of bases. The owner of the car admitted that a weapon was in the car. Thus, the handgun was evidence of a crime when considered with the report law enforcement had received that Mr. Gardner was on his way with a weapon to kill Fears. The driver and owner of the car, Corey Pigg, had given permission for officers to search his car and had specifically authorized Officer Martin to remove the firearm. (Tr. 45).

The patdown of the defendant which led to the discovery of the ammunition was also authorized on a number of bases. It was, at the minimum, during a Terry stop. See United States v. Walker, 494 F.3d at 693 above. A thorough search of the defendant incident to his arrest was justified. United States v. Pratt, 355 F.3d 1119, 1121 (8th Cir. 2004).

The stop of the Ford Escape in which the defendant was a passenger was justified both as an investigatory stop based on reasonable suspicion that criminal activity was afoot and as a detention based on probable cause that a crime had been committed or was being committed at that time. The evidence seized at and after the stop of the defendant, the firearm and the five rounds of ammunition, was properly seized, is admissible in evidence and should not be suppressed.

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Evidence (Document #37) be denied.

**IT IS HEREBY ORDERED** that Defendant's First Motion in Limine (Document #36) and Defendant's Motion to Produce (Document #38), at the request of the parties, be deferred to the trial judge for determination.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time

for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

                                                  /s/ Lewis M. Blanton  
                                                  LEWIS M. BLANTON  
                                                  UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of April, 2010.